UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRANK BALLARD, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:11-CV-74 CAS |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant State Farm Mutual Automobile Insurance Company's ("State Farm") motion for summary judgment. The matter is fully briefed and ready for disposition. For the following reasons, the Court will grant State Farm's motion for summary judgment.

**I.      Background**

In the early morning hours of February 5, 2010, plaintiff Frank Ballard was driving a dump truck for Missouri American Water when he was struck by a motor vehicle driven by Holly McIntyre ("Ms. McIntyre"). He sustained injuries to his left shoulder, requiring surgery, and injuries to his back. Plaintiff received $100,000 from Ms. McIntyre's insurer to settle his claims against her, but his damages exceeded $100,000. Plaintiff had five insurance policies issued by defendant State Farm, each covering a separate vehicle he owned, and each providing for underinsured motorist coverage. The policies had stated limits for underinsured motorist coverage of $100,000. In this action, plaintiff seeks to stack the underinsured motorist coverage provided by his State Farm policies, for a payment of $500,000 under the policies. State Farm has moved for summary judgment, arguing the anti-

stacking provision of its insurance policies controls, permitting only a single recovery of up to $100,000 for underinsured motorist coverage.

## II.     Legal Standard

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(c), this Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Board of Educ., Island Trees v. Pico, 457 U.S. 853, 863 (1982).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  Cearley v. General Am. Transp. Corp., 186 F.3d 887, 889 (8th Cir. 1999) (citing Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

## III.    Facts[1]

On February 5, 2010, at approximately 1:38 a.m., plaintiff was driving a dump truck owned by his employer, Missouri American Water, to pick up material and black top to fill a hole.  He was near the intersection of Highway 70 and Interstate 270 when he was struck by a motor vehicle being driven by Ms. McIntyre.

---

[1]These facts are taken from defendant's Statement of Uncontroverted Material Facts ("Def. SOF").  Plaintiff admitted each of these facts, with the exception of paragraphs 14-16.  Plaintiff states the certificate attached to the insurance policy states it was in effect on the date of the loss, but the declaration page identifies the policy period as July 16, 2009 to January 16, 2009.  (Pl. Resp. at 1).  Plaintiff does not dispute, however, that this is the applicable policy language.  In fact, plaintiff recites the same policy language, citing to defendant's exhibit, in his Additional Statement of Material Facts.  (Pl. Resp. at 2).  As such, the Court will deem the language of the policy stipulated by the parties.

Plaintiff testified at deposition that because of the accident, he was unable to work from February 4, 2010 to June 23, 2010. He testified that his damages exceed $100,000. (Pl. Resp., Add. Facts ¶¶ 5, 7; Def. Resp. to Add. Facts at 4-5). Plaintiff received the sum of $100,000 from Ms. McIntyre's insurance company to settle his claims against her. Plaintiff also received Workers' Compensation benefits including medical payments of $64,041.39, temporary total disability benefits of $17,303.14, and an additional recovery of $53,717.19.

Plaintiff was insured under five policies issued to plaintiff by State Farm, with each policy containing underinsured motorist coverage. Each policy covered a separate vehicle owned by plaintiff. The terms of the policies are the same, except for the Declarations page, which identifies the insured vehicle and the premiums charged.

The State Farm policies had stated limits for underinsured motorist coverage of $100,000 per person. The parties do not dispute the language of the State Farm policies. The policy language will be cited, infra, as it becomes relevant to the issues.

**IV.   Discussion**

(A)   Plaintiff's Right to Stack Underinsured Motorist Coverage

"'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo., 992 S.W.2d 308, 313 (Mo. Ct. App. 1999). Because Missouri does not mandate underinsured motorist coverage, whether underinsured motorist benefits can be stacked is determined by the contract entered between the insured and the insurer. See Rodriguez v. General Accident Ins.

Co. of Am., 808 S.W.2d 379, 383 (Mo. 1991). "This means that if the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable. If, however, policy language is ambiguous [as to stacking], it must be construed against the insurer, and stacking will be allowed." Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009) (internal quotations and citations omitted).

Plaintiff's policies provided for underinsured motorist coverage as follows:

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be:

1. sustained by an *insured*; and

2. caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

*We* will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* have been used up by payment of judgments or settlements, or have been offered to the *insured* in writing.

Pl. Policy, Ex. H at 15-16.

The policies contained the following "**Limits**" language for underinsured motorist coverage:

1. . . .
    a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident . . . is the lesser of:

    (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

    (2) the limit shown under "Each Person".
. . .

    2.       These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:
- a.    *insureds*;
- b.    claims made;
- c.    vehicles insured; or
- d.    vehicles involved in the accident.

Pl. Policy, Ex. H at 16-17.

Finally, the underinsured motorist coverage contains the following anti-stacking provision:

**If Other Underinsured Motor Vehicle Coverage Applies**

    1.       If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the **State Farm Companies** apply to the same *bodily injury*, then:

        a.    the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

        b.    the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

. . .

Pl. Policy, Ex. H at 17.

State Farm contends that this language unambiguously limits plaintiff's recovery to $100,000. The policies state that the most State Farm will pay is the limit shown under "Each Person," which is $100,000. The policies then state that where an insured has more than one policy, the limits will not be added together, and the maximum amount to be paid is the "single highest applicable limit provided by any one of the policies," which is $100,000.

Two recent Missouri Court of Appeals cases support State Farm's argument: <u>Taylor v. State Farm Mut. Ins. Co.</u>, --- S.W.3d ----, 2012 WL 538960 (Mo. Ct. App. Feb. 21, 2012) and <u>Lee v. State</u>

Farm Mut. Auto., 2011 WL 5983370 (Mo. Ct. App. Nov. 30, 2011). In Lee, plaintiffs had policy language nearly identical to that of plaintiff here. The Court found the anti-stacking exclusion to be unambiguous, stating "[a]n ordinary person of average understanding would be able to understand the language of the policy's underinsured motorist coverage, along with the limitations and exclusions set forth." Id. at *2. Plaintiff's argument that the language was ambiguous were unpersuasive because the policy as a whole was unambiguous. The Court found plaintiffs could not stack their three separate insurance policies' underinsured motor vehicle coverage.

Similarly, in Taylor, the Court found the following anti-stacking provision unambiguous: "If the insured sustains bodily injury as a pedestrian and other underinsured motor vehicle coverage applies: the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability." Id. at **4-5. The Court found that plaintiff failed to articulate any plausible alternative reading of the anti-stacking provision that would cause a reasonable person to believe the limits of both policies applied.

Here, the policy's anti-stacking language reads nearly identical to that which the Missouri Court of Appeals found unambiguous in Lee, and is stronger than the anti-stacking language the Missouri Court of Appeals found unambiguous in Taylor. Moreover, like Taylor, the policy language appears under the heading "**If There is Other Underinsured Motor Vehicle Coverage**," and therefore a person reading the policy would know that this anti-stacking section applies if more than one policy covered a underinsured motor vehicle claim.

Plaintiff argues that his case is similar to Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132 (Mo. 2009), in which the Missouri Supreme Court allowed plaintiffs to stack their underinsured motorist benefits based on an insurance policy it found ambiguous. Plaintiff argues that the "other

insurance" clause in his policy is similar to that which the Court found ambiguous in <u>Ritchie</u>. Plaintiff's argument is entirely unpersuasive. A simple comparison of the "other insurance" provisions from <u>Ritchie</u> and from plaintiff's policy highlights the significant differences between the two, and the strength and unambiguity of plaintiff's policy:

| "Other Insurance" Provision from <u>Ritchie</u> | "Other Insurance" Provision from Plaintiff's State Farm Policy |
|---|---|
| OTHER INSURANCE<br><br>If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:<br>1.  Any recovery for damages may be equal but not exceed the highest applicable limit for any one vehicle under this insurance or other insurance providing coverage on either a primary or excess basis. . . .<br>2.  Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage. | **If Other Underinsured Motor Vehicle Coverage Applies**<br><br>1.  If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury**, then:<br>a.  the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and<br>b.  the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one or more policies from which to make payment. |

<u>Compare</u> <u>Ritchie</u>, 307 S.W.3d at 137 <u>and</u> Pl. Policy, Ex. H at 17 (emphasis in original).

The <u>Ritchie</u> court found the "other insurance" language ambiguous because an ordinary person could reasonably interpret the provision to mean that when an injured insured is riding in a non-owned vehicle and there are multiple underinsured motorist coverages, then each of the underinsured motorist coverages are excess to the other, and may be stacked. <u>Ritchie</u>, 307 S.W.3d at 138. In our case, however, no ordinary person could reasonably interpret plaintiff's "other insurance" provision to mean that the coverage is excess to other applicable underinsured motorist

coverage. The provision states unambiguously in paragraph (1)(a), "the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid." Pl. Policy, Ex. H at 17.

Plaintiff cites in his response the following provision of his policy: "the Underinsured Motor Vehicle Cover provided by this policy applies as excess coverage." Pl. Resp. at 8.[2] Plaintiff has plucked this language from paragraph 3 of the "other insurance" provision, and has taken it out of context. Paragraph 3 includes subsections (a) and (b), which plaintiff does not cite, and which limit this language and make it inapplicable to plaintiff's case. Pl. Policy, Ex. H at 18. Subsection (a) applies only if plaintiff had one vehicle policy issued by State Farm, and subsection (b) applies only if plaintiff had other applicable underinsured motor vehicle coverage issued by a different company.[3]

Plaintiff has not articulated any plausible alternative reading of the cited phrase from paragraph 3 that would cause a reasonable person to believe the limits of his five policies would apply. See Taylor 2012 WL 538960 at *4. Plaintiff has taken the phrase entirely out of context from the rest of the policy, including paragraphs 1 and 2 of the "other insurance" provision, and has not demonstrated how it conflicts with the policy as a whole, or paragraph 1 in particular. The Court cannot view this language in isolation, but rather has to evaluate it in context and as part of the whole policy. See Ritchie, 307 S.W.3d at 137; see also Lee, 2011 WL 5983370 at *2. When read in context, paragraph 3, which begins with the phrase "the Underinsured Motor Vehicle Coverage

---

[2]Plaintiff cites this language as appearing on page 22 of the Policy. The Court could not find this language on page 22, but instead finds it on page 18 in paragraph 3 of the "other insurance" provision.

[3]Subsection (b) also incorporates the anti-stacking provision of paragraph (1), which is unambiguous. Further both subsections (a) and (b) limit damages to State Farm's proportionate share.

provided by this policy applies as excess coverage," does not create any ambiguity and does not alter the Court's interpretation of the anti-stacking language provided in paragraph 1.

Under the facts of this case, the Court finds the following language unambiguous: "If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to you or any resident relative by the State Farm Companies apply to the same bodily injury, then the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid." Pl. Policy, Ex. H at 17. A reasonable lay person reading the policy would know that stacking of underinsured motorist policies is disallowed. As such, the maximum amount that State Farm must pay in this matter is $100,000.

(B)  Workers' Compensation Set-Off

Plaintiff also argues that State Farm has no right to a set-off of the amounts paid for workers' compensation coverage. The relevant policy language states as follows:

**Nonduplication**

*We* will not pay under Underinsured Motor Vehicle Coverage any damages:
. . .
2. that:
   a. have already been paid;
   b. could have been paid, or
   c. could be paid
to or for the *insured* under any workers' compensation law, disability law, or similar law; or
. . .

Pl. Policy, Ex. H at 17.

Plaintiff has received workers' compensation benefits, including medical payments of $64,041.39; temporary total disability benefits of $17,303.14; and an additional recovery of

$53,717.19 in settlement of plaintiff's workers' compensation claim.  (Def. SOF, ¶ 11; Ex. G). Plaintiff has received total benefits of $135,061.72.

In <u>Addison v. State Farm Mut. Auto. Ins. Co.</u>, 932 S.W.2d 788 (Mo. Ct. App. 1996), the Missouri Court of Appeals held language similar to the "nonduplication" language in plaintiff's policy clearly and unambiguously permitted the insurer to set off amounts paid to plaintiff under workers' compensation coverage.  In <u>Addison</u>, plaintiff was injured in a motor vehicle collision, and obtained judgment against the tortfeasors in the amount of $400,000.  The tortfeasor's insurer paid plaintiff Addison the policy limit of $50,000 on the judgment.  Addison also received workers' compensation coverage in the amount of $179,143.77.  He then sought to collect underinsured motorist coverage from State Farm.  State Farm argued that plaintiff's $100,000 policy limit for underinsured motorist coverage had been exhausted based on plaintiff's receipt of $179,000 from workers' compensation.  The Missouri Court of Appeals agreed, and found the State Farm language permitted State Farm to offset its underinsured motorist coverage limits for the amount paid by workers' compensation.[4]

Plaintiff argues, however, that the Missouri Court of Appeals decision in <u>American Family Mut. Ins. Co. v. Ragsdale</u>, 213 S.W.3d 51 (Mo. Ct. App. 2006) would disallow the set-off based on plaintiff's previously-argued ambiguity in the policy.  In <u>Ragsdale</u>, because the Court found the policy at issue ambiguous based on the "other insurance" clause, it construed the entire policy against the insured.  The Court stated that "the same [other insurance] ambiguity prohibits American Family from

---

[4]In <u>Burns v. State Farm Mut. Auto. Ins. Co.</u>, 2003 WL 22992100 (E.D. Mo. Nov. 25, 2003), the Court declined to follow <u>Addison</u>.  The decision was based on the particular policy language at issue—"[a]ny amount payable under this coverage shall be reduced"—which the Court found to be ambiguous.  <u>Id.</u> at **3-4.  Here, unlike <u>Burns</u>, that policy language is not at issue.  In <u>Burns</u>, the Court did not question State Farm's entitlement to a set-off had it used unambiguous language.  Because the Court finds the language at issue here is unambiguous, State Farm is entitled to a set-off.

setting-off monies received by the [plaintiffs] from [the tortfeasor's] liability policy or workers' compensation benefits against the underinsured motorist coverage." Id. at 57. Unlike Ragsdale, here the Court does not find plaintiff's policy ambiguous. See supra, Part IV(A). Because there is no ambiguity to construe against State Farm in this case, no ambiguity prohibits the set-off.

Plaintiff also argues that the policy language only allows a set-off "to the extent it benefits" any workers' compensation benefits insurance company or self-insurer. He then argues he repaid any workers' compensation benefits out of his recovery from the tortfeasor. Plaintiff is relying on the "exclusion" section of the underinsured motorist provision, instead of the "nonduplication" section. Under the nonduplication section, State Farm states that any money that has been paid, could have been paid, or could be paid to or for the insured under workers' compensation law shall be entitled to be set off. The nonduplication section is broader than that which plaintiff interprets, and allows the set-off. Compare Pl. Policy, Ex. H at 17, "Nonduplication" and Pl. Policy, Ex. H at 17, "Exclusions."

Finally, Green v. Federated Mut. Ins. Co., 13 S.W.3d 647, 659 (Mo. Ct. App. 1999), cited by plaintiff, does not support his argument. In Green, the court allowed a set-off for medical expenses and temporary disability. It did not discuss amounts paid to settle workers' compensation claims. As such, plaintiff's argument that State Farm is not entitled to set off his $53,717.19 settlement is not supported.

The Court construes the nonduplication section of plaintiff's underinsured motorist coverage as allowing a set-off in the amount of $131,061.72, which represents the amount of workers' compensation benefits he received. (Def. SOF ¶ 11; Ex. G).

V.   **Conclusion**

The Court finds that the Underinsured Motor Vehicle Coverage provision of State Farm's policy is unambiguous, and plaintiff has no right to stack his five separate State Farm policies. Further, State Farm is entitled to a set-off of $131,061.72 for workers' compensation benefits that have already been paid to or for plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** defendant State Farm Mutual Automobile Insurance Company's motion for summary judgment is **GRANTED**. [Doc. 25]

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of March, 2012.